BIEVER, Respondent, vs. SZULTEK and others, Appellants.
[Two cases.]

*May 28—July 1, 1948.*

*D. J. Regan* of Milwaukee, for the appellants.

For the respondents there was a brief by *Schanen, Schanen & Pauly* of Port Washington, and oral argument by *Erwin N. Pauly.*

WICKHEM, J.   The questions here relate solely to damages, defendants contending that the awards were excessive, that the medical evidence as to the cause of Edward Biever's loss of hearing leaves the matter in a state of speculation, and that there was no evidence whatever that the accident to Esther Biever caused her alleged injuries.

Edward Biever testified that following the accident, during the course of which he sustained an injury to his head, he had pains in his head, shoulders, and neck, and that a few days after the accident he noticed that the hearing in his right ear was adversely affected and that it rapidly got worse.   He also testified that he is now forgetful.   None of these symptoms

predated the accident. The testimony of Dr. Stein, his family physician, was that the headaches, pain in the neck, and forgetfulness were produced by the accident. Dr. Schott, an ear specialist, found a fifty-nine and five-tenths per cent loss of hearing in the right ear and seven and nine-tenths per cent loss of hearing in the left ear. He characterized this condition as "permanent."

In answer to a hypothetical question stating the nature of the injury sustained, the age of plaintiff, and other facts, Dr. Schott stated that the accident could have produced such a loss of hearing. Defendants' principal contention is that this answer leaves in the field of speculation the question whether the accident caused loss of hearing and that the case is governed by the decision of this court in *Vogelsburg v. Mason & Hanger Co.* 250 Wis. 242, 26 N. W. (2d) 678. In that case the plaintiff had been struck by a stream of water and thrown sixty or seventy feet. This happened in February. On July 30th plaintiff sustained a paralytic stroke and the issue was whether the accident caused the stroke. The stroke was the result of a thrombosis of the left lenticulostriate artery in the brain and defendant claimed that plaintiff had failed to prove that the accident caused the thrombosis. There was evidence that at the time of the accident plaintiff had an advanced condition of arteriosclerosis and hypertension and that as the court said. "plaintiff had all of the pathological factors and symtomatic characteristics which naturally lead to a paralytic stroke from the progress of arteriosclerosis and hypertension." In other words, independently of the accident plaintiff had all of the conditions which could account for the stroke. In the light of this the court analyzed the medical history at some length and found that the doctors had done no more than speculate as to the cause of the stroke.

The situation here is quite different. Edward Biever testified to perfect health and excellent hearing up to the time of the accident. The accident involved two cars, one of which

was going sixty miles an hour, and plaintiff sustained a severe blow to the right side of his head. This was immediately followed by a loss of hearing which was very much greater in the right ear which was close to the point of injury. Plaintiff had not seen a doctor or suffered any impairment for six or seven years. Under these circumstances the testimony of the doctor that the injury was capable of causing the impairment does not leave the matter of causation in a state of speculation and guess. We have here no choice of causes so far as the record discloses and the chain of evidence above detailed appears to us to support a jury conclusion that the loss of hearing was caused by the accident. The pain, forgetfulness, and other symptoms testified to by Dr. Stein are positively linked to the accident by the doctor. On the basis of this testimony the jury allowed $750 for pain and suffering and impairment. This is not only a conservative award but one that raises some suspicion that the loss of hearing was not considered by the jury to be related to the accident.

With respect to the award in the case of Esther Biever it is objected that there is no objective basis for her symptoms and no evidence of a causal relation between her alleged injuries and the accident in question. Esther was in excellent health at the time of the accident. Since the accident she has been extremely nervous, has complained of pains in her shoulder, neck, left arm, and elbows, as well as soreness and pain in the left hip and irregular menstruation. She has suffered from headaches. The ligaments and cords in her back are tense, indicating the likelihood of a torn ligament. It was necessary to put a lift on her heel to relieve her from this pain and she wore this for a period of six months. It was the opinion of the doctors that she had suffered a minor concussion in the accident, that her nervous complaints, as well as the disturbances to her menstrual periods, were the result of a psychoneurosis caused by the accident. It appears clearly to us that the medical testimony in combination with the fact that Esther had

been completely healthy up to the time of the accident established the causal relation of the accident to whatever injuries she has sustained.

. While the record does not show the injuries to be permanent it discloses a painful type of injury which persisted to the time of the trial and has affected Esther in her occupation. This type of damage is peculiarly difficult to appraise and an award of $1,500 does not appear to us to be excessive although it may be argued to be quite high.

*By the Court.*—Judgments affirmed.

MARTIN, J., took no part.