HIDDESSEN, Appellant, vs. KUEHN and another, Respondents.

*January 17—February 15, 1949.*

For the appellant there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *Robert J. Sutherland.*

For the respondents there was a brief by *Lee & Becker* of Madison, and oral argument by *Stuart H. Becker.*

FRITZ, J.    The cars operated by Hiddessen and Kuehn, respectively, collided between 5 and 6 p.m., on July 10, 1946, on a highway running east and west, with a twenty-three foot-wide black-top surface and wide gravel and grass shoulders north and south of the roadway.    The cars collided at the place where there was a private driveway extending from the north side of the highway to Kuehn's home.    As Kuehn was driving eastward on the highway, the view to the east along the highway from some distance west of the center of the highway opposite the driveway was such that the top of a west-bound automobile could be seen all of the time while it was within eight hundred feet to the east, and all of the car could be seen while it was six hundred feet to the east of the driveway.    To the west of the driveway the highway sloped gradually for about six hundred feet, during which there is no obstruction to the view eastward.

Kuehn testified that as he was driving eastward on the south half of the black-top roadway and was opposite the entrance to his driveway, he stopped at his mailbox, which was on the south side of the highway; from that point he looked to the east and saw no automobile coming toward him; that he then lowered his side window and looked back to the west,

and then shifted into low gear and drove into his driveway with a quick and sharp turn because he knew it was kind of a dangerous place to turn in; that when the rear wheels of his car were just leaving the north half of the black-top roadway, his car was hit on the right side by Hiddessen's car, which was going westward; and that he did not see the Hiddessen car at any time until it was four feet away and about to hit him.

On the other hand, Hiddessen testified that as he was driving west on the black-top roadway at forty-five to fifty miles an hour and his car was on top of the knoll (which is six hundred feet east of Kuehn's driveway), he saw Kuehn's car about one hundred fifty feet west of the driveway and traveling east on the south side of the highway; that Hiddessen kept on going down the grade at forty-five to fifty miles per hour as the Kuehn car was coming toward him; the car was in his vision and he saw it all the time as he drove closer; that when Hiddessen's car came to a point a little east of the driveway the Kuehn car suddenly made a short-angled turn left at the driveway without stopping; that just before Kuehn started the sudden turn he was still on his right-hand side of the highway and traveling toward Hiddessen; that Hiddessen, to avoid hitting the Kuehn car, put on his brakes and turned right off onto the north shoulder and when his car was about sixty feet east of the driveway it went off the shoulder and then into and through a shallow ditch and struck the right rear side of the Kuehn car at a culvert in his driveway; and that Hiddessen had no control of his car when it went into the ditch and collided with the Kuehn car.

A traffic officer who took measurements testified a skid mark of Hiddessen's car began one foot south of the north edge of the black-top and fifty-nine feet east of the west end of a fifteen-foot-long culvert in the driveway; that, upon Hiddessen's car colliding with the right rear side of Kuehn's car the latter rolled northwesterly into the ditch west of the culvert; and that Hiddessen's car rolled over and stopped upside down

west of the driveway and five feet from the west edge of the culvert. A surveyor testified that the driveway goes into a bank and a driver in a westbound car does not see any driveway or any indication that there is a driveway into the bank until one gets pretty near on top of it. There was evidence that there had been some rain that afternoon but it does not appear to have been sufficient to render dangerous or materially affect the management or control of automobile traffic at the time of the collision.

The jury found that Hiddessen was causally negligent as to speed and management and control of his automobile, but that he was not negligent as to lookout; that Kuehn was causally negligent as to maintaining a lookout and in turning his automobile onto the north lane of travel on the roadway; and that Kuehn's negligence was thirty per cent, and Hiddessen's negligence was seventy per cent of the total causal negligence. On motions after verdict the court denied Hiddessen's motion for judgment notwithstanding the verdict, or to change the jury's findings that he was negligent, or change its answers as to comparative negligence by finding Kuehn's negligence was at least fifty per cent of the total causal negligence. Instead, the court ordered judgment for Kuehn's recovery on the verdict.

Under the evidence to the effect stated above, there were issues for the jury and it was warranted in finding that Hiddessen was causally negligent as to the management and control of his automobile, but that he was not negligent as to lookout. Likewise, there were issues for the jury and it was warranted in finding that Kuehn was causally negligent in respect to maintaining a lookout, and in respect to turning into the north lane of the roadway under the facts and circumstances then existing.

However, the jury's finding that Hiddessen was negligent in respect to speed cannot be sustained. The fact that he was driving at forty-five to fifty miles per hour, which was neither

unlawful nor negligent on the rural highway under the existing facts and circumstances, while he saw Kuehn approaching on the south half of the roadway and stop his car there and look to the rear out of his side window, did not admit of finding that Hiddessen was negligent in driving forty-five to fifty miles per hour. It was not until Hiddessen,—in keeping his lookout, which the jury rightly found was not negligent, —could see Kuehn start to drive across the north lane, that his speed of forty-five to fifty miles per hour, if it had been voluntarily continued by him, could have been considered negligent. When Hiddessen became suddenly and unexpectedly confronted with an emergency by reason of Kuehn's turning abruptly across the north lane, the course and movements of Hiddessen's car from then on could be found to be due to negligence in his management and control of his car; but although the fact that the speed at which he had been lawfully approaching until confronted with the emergency may have made it more difficult for him to manage and control his car, that does not warrant finding that his speed, which theretofore was lawful and permissible, constituted causal negligence. From the time Kuehn negligently turned onto the north lane and was promptly observed by Hiddessen who, in his exercise of due care, immediately took steps to avoid a collision, the whole question was whether from that time on Hiddessen was negligent in his management and control. *Reynolds v. Madison Bus Co.* 250 Wis. 294, 306, 26 N. W. (2d) 653; and in the determination of that issue the speed of his car was but an incident involved in connection with the evidence in relation to his other acts and conduct in respect to the management and control of his car and the consequences thereof.

Furthermore, when Kuehn began to turn left to cross the north lane in the pathway of Hiddessen's approaching automobile, which was clearly visible to Kuehn and ought to have been seen by Kuehn in the exercise of ordinary care, there

were clearly applicable to him the provisions in ch. 85, Stats., that,—

"The operator of a vehicle entering a public highway from an alley, garage or private driveway shall yield the right of way to all vehicles approaching on such highway." (Sec. 85.18(9), Stats.)

And that,—

"The operator of a vehicle within an intersection intending to turn to the left across the path of any vehicle approaching from the opposite direction, may make such left turn where it is permitted only after affording a reasonable opportunity to the operator of such vehicle to avoid a collision." (Sec. 85.18(5), Stats.)

As we said in *De Baker v. Austin,* 233 Wis. 39, 45, 287 N. W. 720,—.

"The purpose of these statutes is to assure a proper lookout by the driver of the emerging car. The same degree of care as to lookout should be exercised in turning into a driveway as in emerging from it. We do not mean to imply that these statutes oblige one about to turn left into a driveway to stop before invading his left side of the road, but he is obliged to make as effective a lookout as stopping would have afforded him, and is obliged to make as effective a lookout to avoid interfering with an approaching car as would have been required had he been entering the highway from a driveway." See also *Hafemann v. Milwaukee Automobile Ins. Co.* 253 Wis. 540, 34 N. W. (2d) 809.

As we said in *Lurie v. Nickel,* 233 Wis. 420, 424, 289 N. W. 686, in relation to a driver who turned left across the pathway of a car traveling in the opposite direction,—

"Causal negligence in that respect is so apt to create such an exceedingly dangerous condition that often a collision cannot be avoided by the exercise of even the utmost care on the part of the driver of another car. And so under the facts and circumstances herein, the plaintiff's negligence in that respect, together with his causal negligence in respect to lookout, was

clearly the principal and predominating cause of the collision, and rendered it inevitable to such an extent that it was attributable at least as much thereto as it was to defendant's negligence in respect to speed alone. Consequently, the court erred in denying the defendant's motion to change the jury's findings as to comparative negligence by finding that plaintiff's causal negligence was equal at least to that of the defendant; and in failing thereupon to enter judgment dismissing the complaint as well as the counterclaim."

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment dismissing the counterclaim of Lawrence H. Kuehn.