REUHL, Plaintiff and Respondent, vs. USZLER and another, Defendants and Appellants: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Impleaded Defendant and Appellant.

*September 15—October 11, 1949.*

518

For the appellants Chester J. Uszler and London Guarantee & Accident Company, Limited, there were briefs by *Bender, Trump & McIntyre,* attorneys, and *Rodger S. Trump* of counsel, all of Milwaukee, and oral argument by *Rodger S. Trump.*

For the appellant State Farm Mutual Automobile Insurance Company there was a brief by *Roberts, Roe & Boardman,* attorneys, and *Walter M. Bjork* of counsel, all of Madison, and oral argument by *Mr. Bjork.*

For the respondent there was a brief by *Mistele & Smith* of Jefferson, and oral argument by *Richard C. Smith.*

MARTIN, J.   Upon this appeal the defendants first contend that the evidence does not sustain the findings of the jury as to defendant Uszler's negligence.

As to lookout, plaintiff and defendant were faced with almost identical problems when they reached the crest of the hill.   It is undisputed that plaintiff, although going forty miles per hour, was able to stop without any difficulty when he saw the Kuhlow car.   Defendant testified that he was not exceeding this same speed.   Except for the fact that defend-

ant had a shorter distance in which to stop, there was no change in the condition that confronted these drivers when each obtained a view of the car or cars stopped. The jury properly concluded that had defendant kept a proper lookout as he crossed the crest of the hill he would have seen plaintiff's car and Kuhlow's car in ample time to avoid the collision.

The hill was estimated to range from five hundred sixty to six hundred twenty-five feet in length. None of the drivers agreed as to the place where the accident occurred. Reverend Kuhlow thought it took place at the bottom of the hill, plaintiff thought it was three quarters of the way down the hill, and defendant, that it occurred from one hundred to two hundred feet from the crest. The statement of the plaintiff that the accident occurred three quarters of the way down the hill, and Reverend Kuhlow's testimony that a car parked at the bottom of the hill could be observed thirty feet east of the crest, indicate that defendant could have seen the plaintiff's automobile when the distance intervening was at least four hundred feet. Defendant's failure to see plaintiff's automobile until it was from forty to one hundred feet away constitutes negligent lookout.

Defendants have cited *Culver v. Webb* (1944), 244 Wis. 478, 12 N. W. (2d) 731, which is distinguishable for in that case defendant driving in a westerly direction saw the other automobile when it started to move southeasterly toward the highway from a tavern driveway and, therefore, lookout was not an issue.

As to management and control, defendants rely on the testimony of defendant as to what happened when he approached the top of the hill:

"When I came to the top of the hill I noticed the cars in front of me and the funeral procession and the other cars and the cars were at a standstill and I immediately applied my brakes and skidded all the way in."

and relating to turning his car one way, then the other:

"Well you have a tendency to try to avoid a collision and I seen there was nothing to do about it and reflex action is to turn one way or the other and that is what started me in a side skid just before the impact."

Defendants have cited *Royer v. Saecker* (1931), 204 Wis. 265, 234 N. W. 742; *Quinn v. Hartmann* (1933), 210 Wis. 551, 246 N. W. 587; *Schulz v. General Casualty Co.* (1939), 233 Wis. 118, 288 N. W. 803; and *Beer v. Strauf* (1941), 236 Wis. 597, 296 N. W. 68, to support their contention that the duty of a driver is not to have his vehicle under such control as to avoid an accident, but to use ordinary care to that end.

The brakes on defendant's car were in excellent operating condition. As stated previously, defendant testified that he was not exceeding forty miles per hour when he saw the cars. Plaintiff, proceeding at a similar speed, had no trouble stopping.

Sec. 85.40 (2) (b), Stats., requires every vehicle to be operated at an appropriate reduced speed when approaching and going around a curve, when approaching a hill crest, and generally to be controlled in such a manner as to avoid collision.

Independent of statute, when the view of the driver of an automobile is obstructed, whether by reason of a grade or otherwise, the speed of the car should be so reduced that the car can be stopped within the distance the driver can see ahead. See *Zigler v. Kinney* (1947), 250 Wis. 338, 27 N. W. (2d) 433, and *Lauson v. Fond du Lac* (1909), 141 Wis. 57, 123 N. W. 629. These cases limit the rule in the cases cited by defendants, and their doctrine can be properly applied in the present case. Under the circumstances, ordinary care required defendant to stop before colliding with plaintiff's car and his failure to do so amounted to negligence as a matter of law.

As to speed, three disinterested witnesses in the funeral procession were of the opinion that the defendant was traveling sixty miles per hour. One of these witnesses observed smoke roll out from the tires resulting from the application of brakes. Although defendant stated that he was driving at a speed of forty miles per hour, he was unable to control his car. The evidence is such that the jury properly concluded he was going far in excess of that speed or he would have been able to stop to the rear of plaintiff's car.

The evidence shows further that Highway 18 has a lot of hills and curves in the five-mile strip of road east of the point of collision, that it was a Sunday afternoon and traffic was heavy and congested, that there was a "no-passing zone" marked by a yellow line commencing east of the crest of the hill, and that a long funeral procession was approaching from the west. These factors produced a potential hazard which changed into an actual hazard by defendant's speed.

Even though defendant failed to foresee the danger that resulted from his negligent speed, the test of foreseeability was ruled out by the fact that he collided with the plaintiff's car as the direct result of not having his car under control in accordance with the restriction of sec. 85.40 (2) (b), Stats., and in view of the circumstances related above. See *Koehler v. Waukesha Milk Co.* (1926), 190 Wis. 52, 208 N. W. 901.

It was held in *Osborne v. Montgomery* (1931), 203 Wis. 223, 234 N. W. 372, that where an act is done in violation of a statute or ordinance, which act invades an interest protected by the statute or ordinance, there no inquiry can be permitted as to the element of foreseeability.

Defendants have cited *DeKeyser v. Milwaukee Automobile Ins. Co.* (1941), 236 Wis. 419, 295 N. W. 755; *Grover v. Sherman* (1934), 214 Wis. 152, 252 N. W. 680; *Saley v. Hardware Mut. Casualty Co.* (1945), 246 Wis. 647, 18 N. W. (2d) 342; *Quinn v. Hartmann, supra; Hiddessen v.*

*Kuehn* (1949), 254 Wis. 214, 36 N. W. (2d) 82, which hold that when a sudden obstruction is placed in a driver's lane of traffic, the driver's negligence, if any exists, is not causal in producing an accident. In those cases the driver did not create the dangerous situation.

The next question is whether the plaintiff, Merlin Reuhl, was guilty of causal negligence as a matter of law.

Defendants have asserted that plaintiff's stopping behind the Kuhlow car was parking, but the evidence is clear that under the circumstances plaintiff was not parking nor was the parking statute applicable. His action in stopping was involuntary. He was restricted by lack of space in which to pass due to the position of the Kuhlow car and the funeral procession. It was a momentary pause to determine what to do. After he brought his car to a stop he kept the motor running and in gear and his feet on the foot brake and clutch. He was there approximately two seconds when defendant's car hit the rear of his automobile. Defendants contend that the six-foot shoulder was more than adequate to accommodate the 1937 Pontiac automobile which plaintiff was driving but, as stated earlier in this opinion, the record shows that it was a steep shoulder, four feet of gravel and two feet of grass, with a deep ditch along the shoulder.

See *Cole v. Phephles* (1942), 241 Wis. 155, 5 N. W. (2d) 755, in which this court passed upon a similar issue as to whether momentary and involuntary stopping was governed by sec. 85.19, Stats. It is clear that the parking statute was never intended to apply to plaintiff or to persons in a similar situation.

Plaintiff operated his car with ordinary care in stopping behind the Kuhlow car as he did. If he did anticipate any possible harm from the temporary stopping, he had the right to rely on sec. 85.40 (2) (b), Stats., the doctrine of the *Lawson Case,* and the assumption that other drivers would use ordinary care.

Plaintiff could not possibly foresee that Reverend Kuhlow was going to remain parked in the roadway as long as he did. None of the occupants was on the roadway, and the car had no appearance of being disabled. Reverend Kuhlow testified that he drove his car forward just as the accident occurred so that his automobile was moving when it was struck by plaintiff's car. The question of the emergency doctrine submitted to the jury was error, but no view taken of it could possibly prejudice the defendants. In a legal sense, an emergency did not exist. The plaintiff, however, was confronted with a situation which was not due to any negligence on his part. Nothing he did or failed to do could be construed as a want of ordinary care.

The evidence is clear that Reverend Kuhlow violated the provisions of the so-called "parking statute" and also sec. 85.19 (1), Stats., which requires that there be an unobstructed width of no less than fifteen feet upon the roadway opposite such standing vehicles for the free passage of other vehicles thereon.

In *Weir v. Caffery* (1945), 247 Wis. 70, 75, 18 N. W. (2d) 327, this court cited *Felix v. Soderberg* (1932), 207 Wis. 76, 240 N. W. 836; *Bunn v. Bucknam* (1938), 227 Wis. 218, 278 N. W. 533; and *Butts v. Ward* (1938), 227 Wis. 387, 279 N. W. 6, supporting the rule "that stopping a car on the roadway in violation of the parking statute operates as a proximate cause of a collision with the stopped car by a car approaching from the rear. With like and equal reason it operates as a proximate cause of a collision of a car approaching the stopped car with an approaching car or a collision with an object on the highway caused by effort to avoid the approaching car."

The evidence clearly sustains the finding of the jury that the negligence of Kuhlow was the substantial factor in causing the injury sustained by the plaintiff. See *Hatch v. Smail* (1946), 249 Wis. 183, 23 N. W. (2d) 460, and *Brown v.*

*Travelers Indemnity Co.* (1947), 251 Wis. 188, 28 N. W. (2d) 306.

The findings of the jury are supported by the evidence showing that defendant Uszler's negligence in respect to lookout, management and control, and speed were all causal factors in the collision. See *Cole v. Phephles, supra,* and *Hoffmann v. Krause* (1945), 247 Wis. 565, 20 N. W. (2d) 546.

The final question relates to the damages awarded to plaintiff.

Plaintiff was twenty-one years of age at the time of the accident. He was in perfect health and was accustomed to doing the heavy work on his father's two-hundred-acre farm. He felt pain within a half hour after the accident and by the time he reached his home, he suffered severe pain in his neck, right side, back, and right leg. He consulted Dr. Kelchner, an osteopath, who gave him several treatments. After a week of no work, he started on light jobs. The pains continued and three weeks later he consulted Dr. Floyd Wendt, a physician, who examined and treated him and advised a sacroiliac belt. He also advised against heavy lifting, straining, or quick twisting. Dr. Wendt saw and treated him about twenty times up to the time of the trial. Dr. Wendt testified that the sacroiliac strain constituted a permanent injury.

At the request of the defendant, State Farm Mutual Automobile Insurance Company, Dr. O. H. Hanson examined plaintiff. He reported that an examination of plaintiff's back revealed some muscle spasm and tenderness in his right lower back and an area of tenderness over the right fourth lumbar vertebra. He diagnosed the condition as a degenerate disease in the lowest joint space where the lumbar vertebra and the sacrum join, due ordinarily to injury or minor fall, causing a low-grade inflammatory condition with periods of pain after exertion, which might last days or weeks, and discomfort for a long time. He also testified that this could not be corrected by medication, only by an operation.

Since the accident and because of his inability to do work as before, plaintiff and his father now only work about ninety-five acres and the father is obliged to do the heavy work.

Defendants rely on *Weinfurther v. Princl* (1948), 254 Wis. 52, 35 N. W. (2d) 201, where it was held that the jury's assessment of $2,000 for plaintiff's personal injury was so excessive that the recovery of that amount was not sustained. However, in that case plaintiff was discharged seven weeks after the accident because further treatment was not required, and it was felt that in four to five weeks more plaintiff would be fully recovered. There was only a possibility of further pain in the event of a jar or misstep.

See *Schemm v. Bruch* (1947), 251 Wis. 229, 29 N. W. (2d) 66, and *Dabareiner v. Weisflog* (1948), 253 Wis. 23, 33 N. W. (2d) 220, in which sacroiliac injuries caused permanent disability. Awards of $5,000 to a thirty-five-year-old workingwoman and $4,250 to a fifty-one-year-old teacher and housewife were sustained, respectively, in those cases.

While an award of $7,500 appears substantially greater, the plaintiff in this case was twenty-one at the time of the accident and, as a man, has greater possibilities and responsibilities. We have carefully reviewed the evidence and hold that the jury's verdict, which was approved by the trial court, was not perverse. No element of bias, passion, or prejudice affected the decision.

*By the Court.*—Judgment affirmed.