DERENNE, by Guardian *ad litem,* and another, Respondents, vs. VLIES and others, Appellants.

*January 10—February 6, 1951.*

For the appellants there was a brief by *McCue, Regan & McCue* of Milwaukee, and *Evrard & Evrard* and *Duffy, Holman & Faulds* of Green Bay, and oral argument by *Raymond E. Evrard*.

*Dudley O. Emmert* of Manitowoc, for the respondents.

FAIRCHILD, J. The evidence is to the effect that Alvin Derenne sustained injuries which caused him distress from which he had never suffered prior to the accident. Immediately after the accident he was found to have been injured by bruises which will be referred to later, and particularly a pain occurred in the back just above the right hip. It is this difficulty which causes the serious damage. Immediately after the accident he was taken to Dr. Kercher, who, on examination and from statements of the young man, found a deep gash under the eye, bleeding from the face, numerous abrasions on face, back injury, injury to the right knee, right leg, and the wrist. It appears that the plaintiff at that time complained of the injury to his back, although there is evidence that he did not expect it to result in a serious or permanent injury. After his visit to the doctor's office, he was taken home. He was bothered considerably on the ride home by the jarring of the car. This caused pain in his back in the region mentioned. The young man was told that his wrist was just sprained, and he "thought that his back was the same thing and that it would go away." But it does appear that he was laid up for five weeks in bed, "intermittently," following the accident. During that time he did no work, largely because of the pain in his face and knee, although he "couldn't bend because his knee and his back were bothering him." After a few months the pain in the eye seems to have ceased, and the injury to the knee got

better. But the plaintiff's back bothered him all the time, whether he sat down or stood up or was riding in the car. After the period of rest, he again attempted to take up his work on his father's farm, which required lifting of heavy articles, and he found that he could not perform as he had before because of the pain in his back. He couldn't pick up stones in the field, nor ride a tractor because the jarring, as he described it, bothered his back.

Prior to the accident he had been doing all the heavy work on his father's one-hundred-sixty-acre farm, but after the accident his brother gave up employment at Algoma to stay home and take the plaintiff's place, as was testified, because "plaintiff couldn't stand the heavy work and lifting." It is undisputed that before the accident plaintiff had met the requirements of all the heavy work in connection with farming, but thereafter he attempted only light work for a season. Then, on November 22, 1947, after his marriage, he moved to his father-in-law's farm, but again he could not manage the heavy work. He looked for a job which wouldn't require lifting and secured employment in the Mishicot whey plant, where he did general light cleanup work. But when he was transferred to a job that required lifting heavy cans, his back bothered him, and he complained to the foreman. He continued, however, at the job until he fell in attempting to perform the work. There is no occasion for claiming that he sustained an original injury at that work, for his condition was but temporarily aggravated by that lifting. He gave up the work because he could not stand it. The fact that his endurance and strength were normal up to the time of the automobile collision and that immediately thereafter the described physical condition ensuing showed permanent impairment did not leave the matter of causation in a state of "speculation and guess but supported a jury conclusion" that the physical impairment was caused by the accident. *Biever v. Szultek,* 253 Wis. 134, 33 N. W. (2d) 246.

He earned from $170 to $175 a month at the whey plant and at the time of the trial was unable, because of his condition, to earn more than $100 per month in the position he then had.

The medical testimony offered by plaintiff and defendants recognized objective evidence of disability in plaintiff's back at the point where plaintiff claims his injury occurred on October 19, 1946. There is an estimate by medical testimony that there was a ten per cent permanent disability; that with surgery the permanent disability might be reduced to five per cent.

None of the difficulties which the plaintiff established as presently existing predated the accident. The testimony of Dr. Gregory is that the "physical examination showed a very painful area in the lower right side of his back. This pain was persistent no matter what position he was in. That pain was always in the same area." Dr. Kercher testified that when he first saw the plaintiff "he was conscious when they brought him in, complained of pain. No X ray of his back. Complained of pain in the lower back," but that later, upon examining the plaintiff, "I asked him about his back. He never mentioned his back after the first day. I asked him how his back was and he said it was a lot better,. and he thought it would blow over. Clear up." Dr. Witcpalek, upon examination, said: I advised Alvin Derenne with reference to his back and to working that "he should not do heavy lifting and if necessary take other type of work where that is not such a factor." X rays were taken later. Dr. MacLaren, in answer to the question as to the reason for saying that the plaintiff had a permanent disability, answered: "because of the findings in the X rays, the findings on physical examination of a muscle spasm in the lower lumbar region." Dr. Nellen, a witness for the defendants, said that he definitely found a herniated fat pad in examining the back, and

in response to the question: "As a matter of fact doctor when you use your own finger you could determine yourself, regardless what the patient told you, that he had pain?" Answer: "Yes, it's both objective and subjective."

The extent of the injury, as appears from the evidence accepted by the jury as controlling, gives us a specimen of young manhood desiring to do the work essential upon a farm suddenly, by reason of an accident, becoming incapacitated so that very essential portions of that work cannot be performed by him. The record shows the injury to be permanent and discloses his type of injury, which, to say the least, is exceedingly uncomfortable and destroys to a considerable extent his ability to do farm work. Farming was to be his lifework. While the type of damage is particularly difficult to appraise and, as the trial court said, the amount allowed is high, nevertheless it does not appear to be excessive in the case of a young man twenty-one years of age, thus handicapped. Plaintiff's injuries were serious. There is credible evidence of substantial suffering and of temporary and permanent disability. The injuries have impaired and will impair plaintiff's ability to engage in normal farm work and in any employment requiring heavy lifting. *Reuhl v. Uszler,* 255 Wis. 516, 39 N. W. (2d) 444. The testimony supports the jury's verdict.

The defendant insists costs ought to have been granted in favor of Fred Vlies upon dismissal of the action as against him. The plaintiff brought his action against three defendants. Fred Vlies did not file a separate answer. The defendant Milwaukee Automobile Insurance Company did not serve or file an answer. The trial court in its discretion, noting that there were no separate answers, refused to award costs. Under the circumstances of this case we do not consider an error has been committed.

*By the Court.*—Judgment affirmed.