Standard Accident Insurance Company, Respondent,
vs. Runquist, imp., Appellant.

*September 13—October 11, 1932.*

For the appellant there was a brief by *Curran & Sher* of Superior, and oral argument by *Robert E. Sher.*

For the respondent there was a brief by *Hanitch, Hartley, Johnson & Fritschler* of Superior, and oral argument by *Clarence J. Hartley.*

WICKHEM, J. Defendant's first contention is that the finding of negligence on the part of Runquist has no support in the evidence. The contention requires a consideration of the facts. On the day of the accident Runquist was driving his automobile in a southerly direction on county highway H. His grandson and one August Carlson were in the car with him. Wangen was driving his car north on the same highway. In the car with Wangen were Harold Lee, Elizabeth Carter, and Virginia Johnson. Immediately prior to the accident Wangen had driven over the crest of a hill at a rate of speed variously estimated from thirty-five to forty miles an hour. Runquist was driving his car up the hill at a speed estimated by different witnesses at ten to thirty-five miles an hour. Wangen claimed that he was on his right side of the road and that Runquist was straddling the center of the road. Runquist claimed that he was on his own side of the road and that Wangen was driving left of the center of the highway. The testimony of Wangen was corroborated by a guest in his car, while that of Runquist was supported by his grandson who was riding with him. Hence there is evidently a jury question as to whether Runquist was on the right side of the road, unless the contention of the defendant that the physical facts demonstrate the falsity of Wangen's testimony is valid. This contention is based upon testimony as to the location of the cars after the accident, and that of witnesses as to the tread marks on the highway in the rear of the Runquist car. It is defendant's claim that the cars sideswiped and stopped almost immediately. Seven disinterested witnesses testified that the Runquist car was over on his right edge of the road after the accident, and that it did not travel more than a foot or two after the accident. There was evidence to the effect that the left front wheel of Runquist's car was knocked off and lying alongside the front end of the car, and that there were no marks on the highway to indicate

that the car had moved after it had lost the wheel. The defendant's witness Lee testified that the Runquist car traveled probably four or five feet after the accident before coming to a stop. The testimony of several witnesses was to the effect that the tire marks of the Runquist car ran along the right side of the highway for various distances. One witness testified that the tracks angled off to the side of the road from the center for a distance of forty or fifty feet from the Runquist automobile. Another testified that the tracks ran back on the sod on the right-hand side of the road for a distance of twenty or twenty-five feet and then tapered off to the center.

On the basis of this testimony defendant contends that the Runquist car was virtually stopped in its tracks by the accident, and that when so stopped it was not only on its own side of the road but on the extreme edge with its right wheel in the sod; that the tire marks indicate that it had been on its own side of the road for from twenty-five to forty feet before the collision. It will be noted, however, that all of the witnesses agreed that the tracks angled in from the center of the road. The witnesses did not agree as to the precise route of the tracks, and the observations were made after several cars had driven up and parked behind the automobile of Runquist, raising the possibility of error in identifying the tracks and possibly accounting for the lack of unanimity as to their route.

As to the position of the cars, this court has heretofore had occasion to remark, in *Glatz v. Kroeger Bros. Co.* 168 Wis. 635, 170 N. W. 934, that when two automobiles come together on the highway a lot of surprising consequences flow, and an attempt to estimate the results of the forces involved, in such a way as to give a single interpretation to the physical facts, is always difficult and frequently impossible. It is pretty clear, taking the evidence of those who traced the tire marks, that Runquist was in the center

of the road shortly before the accident. There is evidence by one eye-witness to the effect that as he came around the curve he saw something flying in the air that looked like a pillow; that this was about in the center of the road. The testimony of the grandson of Runquist was that the accident happened on the west side of the road near the center, and that after the accident the Runquist car was on the west side of the road close to the edge. Another witness testified that there was glass in the road twenty-five or thirty feet down to the north, from which the Runquist car came, and that this glass was about in the center of the road.

From all this testimony it seems to us that a jury were entitled to infer that the Runquist car was in the center of the road at the time of the accident, and that it proceeded to the right side of the road after the accident. We think that whether Runquist was driving on the wrong side of the road at the time of the collision was a jury question.

The next contention of defendant presents a more serious question. This is an action for contribution. It is clearly established in Wisconsin that in order for one joint tortfeasor to have contribution against another, it must be established that they have been subjected to a common liability and that the one seeking contribution has paid more than his equitable share of the common obligation. *Zutter v. O'Connell,* 200 Wis. 601, 229 N. W. 74; *Buggs v. Wolff,* 201 Wis. 533, 230 N. W. 621; *Grant v. Asmuth,* 195 Wis. 458, 218 N. W. 834. At the time when this action was commenced, the only liability for Carlson's injuries and death which had been established was that of Wangen. Hence it was plaintiff's burden to establish that Runquist sustained a liability jointly with Wangen to Carlson. Runquist was Carlson's host; Wangen was merely the operator of the second vehicle. It is contended by defendant that the submission to the jury of the question whether Runquist negligently caused the *collision,* even if answered favorably

to plaintiff, falls short of establishing a liability on the part of Runquist to Carlson because it fails to take any account of the host-guest relationship. There is, of course, no escape from defendant's contention unless it can be said that a finding of negligence on the part of the host proximately causing or contributing to the collision sufficiently establishes a liability to the guest, in the absence of an affirmative showing that the guest assumed the risk or was guilty of contributory negligence. If such a conclusion is valid, defendant's contention fails because these defenses were not established or even raised by defendant. Plaintiff cites the case of *Roeber v. Pandl,* 200 Wis. 420, 228 N. W. 512, as controlling on this point. In that case plaintiff was a guest in Pandl's car, and was injured in a collision between the Pandl car and one driven by Smith. The action was against both Pandl and Smith. Smith filed a cross-complaint demanding contribution in case both defendants were found liable to plaintiff. The jury found Smith negligent and also found Pandl negligent with respect to lookout and control. The jury, however, found that Pandl did exercise the degree of skill possessed by him, and, on the basis of this finding, and because it was considered to destroy any basis for a common liability, the trial court dismissed the cross-complaint. Upon appeal this was held to be error, for the reason that with respect to certain types of negligence, such as excessive speed, failure to keep a lookout and to observe the law of the road, the question of skill is not involved, and, the jury having found plaintiff free from contributory negligence, the finding of negligence with respect to lookout was enough to establish the liability of Pandl to plaintiff, and consequently his common liability with Smith.

In *Poneitowcki v. Harres,* 200 Wis. 504, 228 N. W. 126, which was principally relied on by the court in the *Roeber Case,* a guest sued her host for personal injuries sustained

in an automobile accident. On appeal it was contended that the case was improperly submitted for the reason that the jury was simply required to find whether the host was negligent with respect to speed, lookout, control, etc., without any reference to the host-guest relationship. It was held upon appeal that the manner of submission was erroneous, but that certain types of negligent conduct, such as excessive speed, failure to obey the law of the road, and failure to keep a proper lookout, plainly increase the risk of the guest, in the absence of a showing of acquiescence or contributory negligence on the part of the latter. "When the jury found, therefore, that appellant operated his car at an excessive rate of speed and failed to maintain a proper lookout, it amounted to a finding that he failed to exercise the care which the law imposes upon him with reference to his guests. These findings are sufficient to sustain the judgment in favor of the respondent, leaving out of consideration the finding that he did not have his automobile under control, which question must be considered in the light of his skill and experience."

It is our conclusion that, at least as to the question whether Runquist was driving on the right side of the highway, these cases govern. Such negligence falls within the class of cases mentioned in the *Roeber* and *Poneitowcki Cases* as being independent of skill and establishing as a matter of law a violation of the host's duty not to increase the risk assumed, in the absence of a showing of contributory negligence on the part of the guest, or an assumption in the particular case of the risk involved in the act charged. It is not necessary to decide, and we do not decide, that the same conclusions are applicable to the question whether Runquist was negligent with respect to the control of his car. It appears to have been recognized in the *Poneitowcki Case* that the question of the driver's skill may

not easily be separated from such a question. It will be noted that in the *Poneitowcki Case* it was merely held that failure to submit the question in terms of the host-guest relationship was not prejudicial error, and that is all that we here hold. We adhere to the ruling in *Sommerfield v. Flury*, 198 Wis. 163, 223 N. W. 408, that cases involving the negligence of a host to his guest should be submitted to the jury in a manner that takes account of that relationship and that will establish the liability of the host upon the theory that such a relation existed.

It is our conclusion, therefore, that had this been an action by Carlson against defendant, the verdict would be sufficient under the circumstances to sustain a judgment in Carlson's favor. We think that plaintiff, in establishing his case for contribution, has no greater burden than the guest would have had, had he been prosecuting the action.

The next assignment of error is that evidence upon the plea in abatement of defendant's insurance company was taken before the same jury that later heard the case upon its merits. While the plea in abatement was sustained and the action dismissed as to the insurance company, it is contended that the harm resulting from the joinder was complete and irreparable when the jury, during the course of proceedings upon the plea in abatement, became aware that defendant was insured. In support of this contention defendant cites the recent case of *Bergstein v. Popkin*, 202 Wis. 625, 233 N. W. 572. In the *Bergstein Case* the trial court overruled the plea in abatement, and upon appeal this was held to be prejudicial error. In that case the appeal was from a ruling addressed to a properly made objection to the joinder of the insurance company. It can hardly be said that the case is precisely in point, for the reason that here the plea in abatement was sustained. However, it is contended that in this case the proceedings were such that the

interest of the defendant's insurer in the case was fully disclosed to the jury, and that the defendant was as prejudiced in this case as was the defendant in the *Bergstein Case,* due to the fact that some of the evidence upon the plea in abatement was heard by the same jury that tried the case upon the merits. The contention of the defendant presents a difficult question for several reasons. In the first place, it was not error for the court to try the issue raised by the plea in abatement, before a jury; hence the objection by defendant at that stage of the proceedings was properly overruled. However, it is apparent that if this particular type of plea in abatement is to be tried to the same jury that tries the principal action, the doctrine of the *Bergstein Case* is of no practical consequence. The conclusion seems to be irresistible that if the plea in abatement is to be tried before a jury, and if the doctrine of the *Bergstein Case* is to continue to have any practical force and effect, it must be the right of the defendant who interposes such a plea in abatement to insist upon the discharge of the jury which heard the plea in abatement, and the trial of the action on its merits before another jury. This was the defendant's right in this case but there was no insistence upon it. There was no objection to proceeding to trial before the same jury. When the plea in abatement was finally sustained, defendant's counsel merely requested that the court inform the jury that the action was dismissed as to the insurance company. The court acceded to this request, and the trial proceeded. The record is barren of any evidence that defendant had or made any objection to proceeding to a trial upon the merits before the jury that had heard some of the evidence upon the plea in abatement. Under these circumstances we think that defendant waived any objections to the course of the proceeding.

It is further claimed that a new trial should be granted because of remarks made by plaintiff's counsel in the course of his argument to the jury. During the arguments to the jury by counsel for plaintiff, an attempt was made to read from the record in the case of *Carlson v. Wangen,* 204 Wis. 625, 236 N. W. 377. This was objected to and the objection was sustained. Counsel for plaintiff again attempted to read from certain affidavits that were part of the record in that case. Objection was again made to this argument, and sustained. Counsel for plaintiff then stated, "Sometimes we wonder whether the jury is sworn to hear the facts or have the facts kept out." Objection was promptly made and sustained. Counsel then said, "Counsel made the statement this action was brought in the supreme court, went to the supreme court, and finally the Standard Accident Insurance Company had to pay. I want to show why Runquist was not in that case." The court stated that this was not material. The remarks were highly improper, and the only attempt at justification is that the matter commented on was in evidence and properly subject to comment. This misses the point, however. The court had ruled that the argument was improper, and it was the duty of counsel to restrain his argument and his conduct to conform to the ruling. The remarks imply that not only counsel for the defendant but the court were improperly keeping from the jury evidence that bore upon the merits of the case. Our knowledge of the character and ability of counsel leads us to the conclusion that he succumbed for the moment to the strain and excitement of a bitterly contested case. However improper and unfair the remarks were, it is necessary for this court to find some affirmative evidence of their prejudicial effect in order to reverse this judgment. Frequently an award of damages will reflect the result of such remarks, but of course

there is no such award here. The verdict merely resolves what we have held to be a jury question, in favor of the plaintiff. Hence we can only speculate upon the possible result of such remarks. In so far as they appear to reflect upon the administration of justice by the trial court, they were quite as likely to operate to the disadvantage of the plaintiff as to its advantage. In so far as they implied that defendant was seeking to avoid a consideration by the jury of all material facts, their natural tendency was probably to prejudice the defendant. This court is and has been loath to reverse judgments upon the speculative possibility that improper arguments have been effective to prejudice the jury. Such an attitude upon the part of this court is enjoined by sec. 274.37, Stats., which provides in substance that no judgment shall be reversed or set aside or new trial granted unless the errors complained of have affected the substantial rights of the party seeking to reverse the judgment. We come to the conclusion, not without some misgivings, that this judgment should not be reversed because of these remarks to the jury, for the reason that we cannot say that their effect was prejudicial.

It follows from the foregoing that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.