PLAUTZ, Respondent, vs. KUBASTA, Defendant and Respondent: AMERICAN AUTOMOBILE INSURANCE COMPANY, Defendant and Appellant. [Two cases.]

*December 4, 1940—March 11, 1941.*

For the appellant there were briefs by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *Charles F. Smith*.

*Leonard F. Schmitt* of Merrill, for the respondent Marian Plautz.

*Carlyle B. Wurster* of Merrill, for the respondent George Kubasta.

The following opinion was filed January 7, 1941:

WICKHEM, J. The principal questions raised upon this appeal are, (1) whether there is any evidence to support the jury's finding of causal negligence on the part of defendant Kubasta; (2) whether at the time of the accident the policy of defendant insurer covered the truck involved; (3) whether the trial court reduced the amount of the jury's award in accordance with the rules applicable thereto; and (4) whether a new trial should be ordered because of an improper argument to the jury by plaintiff's counsel.

The facts are as follows: Assisted by an allocation of funds and labor from the WPA, the city of Merrill was

engaged in installing certain sewers and gutters in the streets of the city. In consequence the south part of the intersection of Seventh street, which runs east and west, and Chippewa street, which runs north and south, was partly blocked off so that traffic on Seventh street had to drive on the north side of that street and around an outside toilet located in the center of the intersection. On August 30, 1938, at 11:45 a. m., Kubasta, who was hauling dirt on the project, drove his loaded truck in an easterly direction on Seventh street through this intersection. In doing so he passed to the north side of Seventh street, drove around the toilet, swung back to the right side of the street, and proceeded eastward out of the intersection. He was driving at a speed variously estimated from eight to fifteen miles per hour. At a point near the center line of Seventh street and at or a little east of the east crosswalk of that street, Marian Plautz, three years old, ran against or was struck by the truck. She had been playing on the southeast corner of the intersection with several other children and was proceeding in a northeasterly direction across Seventh street at the time of the accident. The point of contact was the right front bumper and fender of the Kubasta truck.

It is claimed by defendant that a truck also being used in connection with the project was parked in the southeast corner of the intersection, considerably north of the south walk which crossed Chippewa street and in such a position as to make it impossible for Kubasta to see the little girl or the other children who were with her in the vicinity of the corner; that the girl darted suddenly out into the roadway from behind this parked truck and ran into the Kubasta truck; that he saw her as soon as it was practicable to do so and stopped his truck within something less than its own length. Plaintiff's evidence was to the effect that the parked truck which Kubasta claims to have interfered with his view was much further to the south than Kubasta claims, and if it

was in this location it clearly did not interfere with his view of the corner. A strong attack is made upon the credibility of this testimony in view of previous contradictory statements made by two or three of the witnesses before the trial. These statements were obtained by city officials and later by an adjuster of the defendant Insurance Company. While the attack upon the testimony is not lacking in persuasiveness, considered as a jury argument, we conclude that the matter was for the jury to resolve. There was sufficient positive testimony that the corner was unobstructed to warrant the jury in drawing such inferences as may reasonably be drawn from that circumstance. The parked truck being out of the way, and the children unquestionably being in the southeast corner, the jury could reasonably conclude that Kubasta had plenty of opportunity under all the circumstances to see the children and to get his truck under such control as to avoid injury to them by reason of any sudden crossing of the street by one of them. Assuming that the jury had a right to believe that the parked truck was not so placed as to interfere with Kubasta's view, it is plain that there were no obstructions in his way as he proceeded along Seventh street except for the brief moment when he was driving around the four-foot square toilet. The finding is also attacked upon the ground that the child darted into the street and ran only eight or nine feet before being struck and that making some reasonable allowance to Kubasta for the time it would take to bring his car to a stop, it is evident that the accident was unavoidable. There is, however, evidence from which a jury might reasonably believe that the child had run sixteen or seventeen feet northeasterly across the street before coming into contact with the truck. Assuming, as we must, that Kubasta had full view of the corner where the children were playing and taking into account his duty of anticipating some such movement as was made by the child, as well as the fact that the child covered some seventeen feet before being

struck, we conclude that there was a jury question as to Kubasta's negligence.

The next question raised is that of coverage, it being contended by defendant insurer that due to certain exclusion clauses in the policy Kubasta was not covered by the policy under which it is sought to be held. The policy in question insured the city of Merrill and contained the usual omnibus clause insuring persons driving the truck with the knowledge and consent of the city. There is no question that Kubasta was driving the truck with such knowledge and consent. The policy did, however, contain an exclusion of coverage "while rented under contract or leased, unless such use is specifically declared and described in this policy and premium charged therefor." Defendant insurer claims that contrary to the jury's findings, the evidence demonstrates that the truck was leased by the city to the WPA. The basis for this is that under the project proposal which defendant claims constitutes a contract between the city and the WPA there is a table labeled "equipment analysis" which refers to truck rentals and prescribes the amount per hour of rental for trucks. It is asserted that this indicates that the city trucks were rented to the WPA. We conclude that this contention is not sound. There is nothing in the project proposal which indicates that possession and control of the city trucks were to be parted with in return for a stipulated compensation in the form of rental. It is indeed not at all certain that the project proposal was intended to integrate a contract, although it is not necessary to determine this question here. The objects and purposes of the proposal are plain. The WPA requires to be set out a project which the city will undertake if the WPA grants funds and furnishes labor to assist the city in completing the project. This was the city's project and when used upon it, the trucks were furthering work by the city upon its own streets and in its own interests. While, in order to give employment to unemployed men, the WPA

proposed to defray a part of the cost of this project, in cash and by furnishing labor, the execution of the project was in the city's interest and was the city's responsibility. The job was superintended by the city's street commissioner, and it could decline to accept truck drivers assigned by the WPA to drive its trucks. We discover no evidence whatever that the city lost its control or possession of these trucks, or that in any sense it leased them to the WPA. The fact that a truck rental was set up in the project analysis was merely for purposes of accounting between the WPA and the city. The city and the WPA both contributed to this project. One of the methods of accounting was to credit the city with what was denominated truck rent at a prescribed price per hour. This does not even tend to prove that the contract was one of rental.

The next question relates to damages. Plaintiff had a fracture of the right thigh, a laceration of her right arm from the front part of the arm to the middle of the forearm with a loosening of the skin and fat underneath that portion of the skin from the muscles extending from the top of the upper arm to the middle of the forearm, and covering about two thirds of the circumference of the arm. Dirt and sand were ground into these tissues. Her elbow joint was opened up. The muscles of the forearm were damaged and torn. Due to certain unfavorable developments in the process of recovery it was necessary to make several grafts of skin. In September, 1939, her right arm was one-half inch smaller in circumference than the left, and there was medical opinion to the effect that it would remain permanently somewhat so. She still has a scar on the right arm which is of considerable size. There is testimony that this will be permanent, that it will be fully exposed in case she wears a bathing suit, and that it will partly show if she wears an elbow-length sleeve. There is a scar on the thigh which is not of any importance. The leg fracture was completely healed without

any permanent disability, and although there is some slight difference in size between the right and left arms, the right arm is normal so far as function is concerned. From this it appears that there are no permanent results of any consequence from this accident except the minor scar on the thigh and some fairly substantial scars on the upper arm. There is, of course, evidence of a substantial amount of suffering during the period following the accident. In addition to hospital and medical expenses, the jury awarded plaintiff $6,000 for these injuries. This verdict is clearly excessive. Since the trial court found it so, and plaintiff does not attack the trial court's conclusion, we shall not labor the point. It is our conclusion further that $4,500 set by the trial court as the lowest sum that a fair-minded jury properly instructed would probably assess is much too high a figure, and is in fact higher than the highest sum which this court would sustain as not excessive. Since for reasons that will hereafter be discussed there must be a new trial, we shall not discuss this point further.

In addition to the foregoing, defendant insurer sets forth numerous errors that are claimed to entitle it to a new trial. We shall discuss only one of these assignments, and that is the claim that plaintiff's counsel indulged in improper and highly prejudicial argument to the jury. In his argument to the jury plaintiff's counsel stated as follows:

"And, members of the jury, I want to say right here in this argument when we come here to try one of these lawsuits, *and especially when the defendant is the American Automobile Insurance Company,* I have never seen it to fail but what we are confronted by this proposition."

Objection was here made to the reference to the Insurance Company. Counsel for plaintiff proceeded:

"I want the court to take into account these interruptions. I want to hurry along. I want to say to you it is my experience

in the trial of these cases, where we have a defendant such as we have here, an insurance company, *and this time it is the American Automobile Insurance Company, Mr. Smith,* that always I am confronted with this proposition, that before the accident is cold they are up there on the scene and they have got their adjuster, this man Reinhold, who was in this particular case, and they come there and they get statements from this witness and that witness. They want to try that little girl's rights on what that adjuster did up there."

This was improper argument. While as pointed out by plaintiff the American Automobile Insurance Company was a known party to the litigation, and it could not have been prejudicial merely to refer to it, the argument was improper because without any evidence in the record to support the argument, it strongly intimated that this particular company always rushed an adjuster to the scene of the accident to get statements from witnesses. The implication is that the general practice of this insurer was characterized by unfairness in adjusting claims. The argument was part of an effort to diminish the force of the fact that certain of the witnesses who testified favorably to plaintiff with respect to the location of the parked truck on the intersection had made contradictory statements to Reinhold, adjuster for defendant insurer. But it is also true that they had made contradictory statements to city officials before they made these statements to Reinhold, and that Reinhold's statements were taken something like two days after the accident. We think that this created a definitely unfair impression. We have too high a regard for counsel for the plaintiff to suppose that this was deliberately calculated to produce this result, but we are compelled to consider its intrinsic unfairness by the content of the argument. So considered, it was a comment upon general practices of this company which were not in evidence and the implication was that the conflicting state-

ments were solely made to defendant's adjuster. There was no ruling by the trial court to mitigate the impression upon the jury, an impression which must have been heightened rather than diminished by the objection of defendant's counsel which was not sustained by the trial court. We have several times had to deal with the matter of improper argument to a jury. Usually it has been impossible to do more than to express disapproval because sec. 274.37, Stats., requires a showing of prejudice, and the effect of the argument objected to has more often than not been a matter of speculation. Where remarks have a clearly prejudicial tendency, the fact of prejudice usually is indicated by an excessive or inadequate award of damages or by findings that are against the weight of the evidence, and where the findings of the jury seem to be in accordance with the preponderance of the evidence and the damages assessed are moderate, it cannot ordinarily be said that the argument resulted in prejudice. See *Standard Accident Ins. Co. v. Runquist,* 209 Wis. 97, 244 N. W. 757. In this case, however, the damages awarded were excessive to the point where this court could probably not even sustain the award as reduced by the trial court. In addition to this, while there was a jury question as to Kubasta's negligence, this issue was extremely close. A great deal depended upon the location of the parked truck, and in respect to this a considerable amount of plaintiff's testimony was under vigorous attack because of conflicting statements made before trial and not unambiguously retracted upon the trial. We cannot resist the conclusion that this argument which was addressed to the latter point made an important contribution to the outcome before the jury, and for this reason there must be a new trial on the issue of Kubasta's negligence and the damages. The question of coverage presented merely a question of law, and defendant's position on that issue is clearly not well taken.

*By the Court.*—Judgments reversed, and cause remanded with directions to grant a new trial on all issues except that of coverage.

A motion for a rehearing was denied, with $25 costs in one case, on March 11, 1941.