LAKE TO LAKE DAIRY CO-OPERATIVE and others, Respondents, vs. ANDREWS and another, Appellants.

*May 5—June 2, 1953.*

For the appellants there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *John C. Whitney.*

For the respondents there was a brief by *Welsh, Trowbridge, Wilmer & Bills,* and oral argument by *James R. Mortell,* all of Green Bay.

MARTIN, J.    The following three issues are raised on this appeal:

1. Did the trial court err in holding Paradise to be negligent as to lookout as a matter of law?

2. Did the court err in including in the special verdict the right-of-way question with respect to the alleged negligence of Paradise?

3. Was Cenefelt guilty of negligence as to speed as a matter of law?

Paradise testified that as he approached the intersection and when about 30 to 40 feet distant from it, he looked to his left and then looked to his right when he was "right up by the intersection" and "just about to enter the intersection." He further testified that when he looked to the right he could see 100 feet to the south and did not see the truck driven by Cenefelt. This court has repeatedly held that when one looks and does not see what is in plain sight, he is in the same situation as one who does not look. *Schoenberg v. Berger* (1950), 257 Wis. 100, 42 N. W. (2d) 466; *Rock v. Sarazen* (1932), 209 Wis. 126, 244 N. W. 577. The trial court therefore properly found Paradise negligent with respect to lookout as a matter of law.

Appellant next contends that Cenefelt should have been held negligent with respect to speed as a matter of law and that no question should have been submitted as to yielding the right of way on the part of Paradise, because, under the provisions of sec. 85.18 (1), Stats., Cenefelt had forfeited the right of way by reason of his excessive speed.

No question is raised as to respondent's lookout, so we may assume he exercised due care in that respect. We are not here faced with the proposition that we must find Cenefelt negligent as to speed and management and control if there is any substantial evidence to support such a finding. The jury found that he exercised due care in such respects. We face the problem whether Cenefelt was negligent as a matter of law in these respects—in other words, whether the evidence is such that no other conclusion can be drawn.

The duty of a driver in traversing an intersection is set forth in sec. 85.40 (2) (a) and (b), Stats., as follows:

"(a) No person shall operate a vehicle at a speed greater than is reasonable and prudent under conditions and having regard for the actual and potential hazards then existing

and the speed of the vehicle shall be so controlled as may be necessary to avoid colliding with any object, person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and using due care.

"(b) The operator of every vehicle shall, consistent with the requirements of paragraph (a), operate at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, when passing school children or other pedestrians, and when special hazard exists with regard to other traffic or by reasons of weather or highway conditions."

We do not construe the language of sub. (b) requiring a driver to "operate at an *appropriate reduced speed* when approaching . . . an intersection . . . and when special hazard exists with regard to other traffic or by reasons of weather or highway conditions" to mean that no matter at what speed (under the maximum limit) a vehicle is being operated, it must be reduced when approaching an intersection. Cenefelt testified that his speed was 35 to 40 miles per hour. This was corroborated by the eyewitness Leland Fels who estimated the speed of both vehicles at between 35 and 40. Whether this was a "reasonable and prudent" speed and "an appropriate reduced speed" under the conditions then existing and considering the hazard presented by the cornfield, was a question for the jury. It could well have concluded from all the facts that Cenefelt's speed was appropriately reduced, reasonable, and prudent, and that he had the right to rely upon his right of way.

It was the testimony of the witness Fels that from the northwest corner of the intersection he saw the trucks coming; they were both about the same distance from the corner; "the pickup truck slowed down and then he speeded up again," "and he couldn't stop any more so he tried to beat the other truck across and then they hit together."

Cenefelt testified that he first saw the pickup truck when it was about 20 or 25 feet back from the intersection and he was then between 40 and 50 feet from it; that the other truck "shot right out in front of me;" that he applied his brakes, and in a matter of seconds the impact occurred.

Paradise said he slowed down to between 15 and 20 miles per hour as he approached the intersection; that he did not see the other truck until right at the time of the impact.

Appellant relies upon *Paluczak v. Jones* (1932), 209 Wis. 640, 245 N. W. 655, where this court held the plaintiff negligent with respect to speed as a matter of law under sec. 85.40 (4), Stats., which then provided that in such a case the speed shall be such as to enable the driver to stop within one half the distance within which he can see approaching traffic. The undisputed evidence there showed that no other conclusion could be drawn but that plaintiff was unable to stop within the distance prescribed by the statute. But sec. 85.40 (4) has been repealed, and we have in this case only the question whether Cenefelt's speed complied with the provisions of sec. 85.40 (2) (a) and (b).

*Reuhl v. Uszler* (1949), 255 Wis. 516, 522, 39 N. W. (2d) 444, is cited to the effect that:

"Independent of statute, when the view of the driver of an automobile is obstructed, whether by reason of a grade or otherwise, the speed of the car should be so reduced that the car can be stopped within the distance the driver can see ahead."

It was also stated in that case, immediately following the language quoted above:

"*Under the circumstances,* ordinary care required defendant to stop before colliding with plaintiff's car and his failure to do so amounted to negligence as a matter of law." (Our emphasis.)

The circumstances there were as follows: The accident occurred near the bottom of a hill on a highway having many hills and curves; it involved three cars traveling in the same direction; traffic was congested; disinterested witnesses testified that plaintiff was traveling 60 miles per hour and that smoke rolled out from the tires when he applied his brakes; the accident happened in a "no-passing zone" and a funeral procession was approaching from the opposite direction.

Such circumstances presented an entirely different picture from the facts in this case where the highways were straight, level, and dry; there was no other traffic than the two trucks involved; Cenefelt was traveling at 35 to 40 miles per hour and exercising due care as to lookout.

There are occasions, such as in the *Reuhl Case, supra,* where the facts permit of no other interpretation than that the driver is negligent with respect to speed. But under the particular circumstances of this case we consider that the facts presented a jury question. This being so, the question as to Paradise's failure to yield the right of way was properly submitted.

*By the Court.*—Judgments affirmed.

FAIRCHILD, J. (*dissenting*). Cenefelt testified that as soon as he saw the pickup truck driven by Paradise emerge from behind the cornfield he knew that it was going too fast to stop in time to avoid a collision, and he (Cenefelt) immediately took his foot off the accelerator and applied the brakes. In spite of this prompt action on Cenefelt's part to stop his truck, he succeeded, according to his own story, only in reducing his speed from 35 or 40 miles per hour to 25 miles per hour as of the instant of impact. The distance traveled by Cenefelt's truck after the accident tends to fully corroborate his testimony in this respect.

The jury absolved Cenefelt of any failure to keep a proper lookout. We thus have a situation where Cenefelt saw the

other vehicle to the left as soon as it was possible to see it as it came into view from behind the cornfield and continued toward the intersection. Furthermore, he took such prompt action in applying his brakes that the question of management and control on his part was not properly submitted to the jury. From this it is established conclusively that Cenefelt, as he approached the intersection with its badly obstructed view to his left, was exceeding a lawful speed.

We of the minority are of the opinion that the words "at an appropriate reduced speed" appearing in sec. 85.40 (2) (b), Stats., as applied to an operator of a motor vehicle approaching an intersection the view of which is obstructed, should be interpreted to mean at such speed as will enable the operator to stop his vehicle within the distance between the point at which he can first see another vehicle approaching on the intersecting highway and a point short of a possible point of impact. Unless the statute is so interpreted, it would not only be superfluous but utterly futile to hold that such an operator had any duty whatever to keep a lookout for traffic approaching on an intersecting highway. What utility does keeping a proper lookout serve, unless at the same time an operator maintains a speed which will permit him to take some effective action to avoid a possible collision?

Few country highway intersections have total obstructions to vision so close to the traveled portion of the highway as did the particular intersection involved in this accident. At the vast majority of the intersections of his route of travel on the day of the accident, a speed of 35 to 40 miles per hour would undoubtedly have allowed Cenefelt, upon seeing a vehicle approaching on an intersecting highway, sufficient time to stop his truck so as to avoid the collision. However, at this particular intersection his view of the traffic approaching on the intersecting highway was so ob-

structed that such a speed was too great to permit stopping in due time.

Because such speed was too great to permit Cenefelt to stop his truck within the distance between the point at which he first was able to sight the vehicle approaching on the intersecting town road and a point short of the point of impact, as a matter of law Cenefelt should have been held negligent with respect to the speed at which he operated his truck.

I am authorized to state that Mr. Chief Justice FRITZ and Mr. Justice CURRIE join in this dissent.