RôESKE and others, Plaintiffs and Respondents, vs. SCHMITT and others, Defendants and Respondents: HOME MUTUAL CASUALTY COMPANY, Defendant and Appellant. [Six cases.] *

*April 5—May 4, 1954.*

* Motion for rehearing denied, with $25 costs, on June 18, 1954.

560

For the appellant there were briefs by *McAndrews & Melli* of Madison, and oral argument by *A. J. McAndrews* and *Joseph A. Melli*.

For the respondents Ernest and Myrtle Roeske there was a brief and oral argument by *William L. McCusker* of Madison.

For the respondents Eloi Schmitt, Peter Schmitt, and Farmers Mutual Automobile Insurance Company there was a brief by *Aberg, Bell, Blake & Conrad* of Madison, and oral argument by *W. J. P. Aberg* and *Edwin A. Conrad*.

For the respondent Marie Louise Tyrer there was a brief by *Bull & Biart* of Madison, and oral argument by *Benjamin H. Bull*.

For the respondents Margaret R. Schmitt, Margaret Blanche Schmitt, and Janet Schmitt there was a brief by *Hall & Griffith* of Madison, and oral argument by *Laurence W. Hall*.

A separate brief on behalf of the respondents on issues of negligence and verdicts was filed by *William L. McCusker, Bull & Biart,* and *Hall & Griffith,* all of Madison, and *D. V.*

*W. Beckwith* and *John T. Harrington,* both of Madison, attorneys for A. A. Haugen.

For the respondent A. A. Haugen there was oral argument by *D. V. W. Beckwith* and *John T. Harrington.*

GEHL, J.   Appellant contends that the evidence fails to support the finding that Tyrer was passing at the intersection, and that in any event if he was negligent in that respect such negligence was not causal.  As appears from our statement of the facts, we are satisfied that there is support for the finding of negligence.  We agree with appellant, however, that it was not a cause of the collision.  By passing the Herheim car he placed his car in his left lane, at most 11 of 12 feet nearer the approaching Schmitt car.  Considering the speed at which Schmitt was traveling, Tyrer's car would have been struck regardless of his position on 51. His act of passing did not of itself contribute to the collision.

The finding that Tyrer was guilty of negligence with respect to speed is attacked.  There was testimony which would have warranted the jury's conclusion that as he entered the intersection he was traveling at the rate of 30 to 35 miles per hour, that he must have been going faster if he passed the Herheim car which was traveling at about that rate, and also that he was going at the rate of from 50 to 60 miles per hour.  That he was traveling at the latter rate was testified to by some of the occupants of an automobile following him who said that the automobiles preceding them were moving at about the same rate as they, from 50 to 60 miles per hour.

The statute applicable is sec. 85.40 (2) (a) and (b):

"(a) No person shall operate a vehicle at a speed greater than is reasonable and prudent under conditions and having regard for the actual and potential hazards then existing and the speed of the vehicle shall be so controlled as may be necessary to avoid colliding with any object, person, vehicle,

or other conveyance on or entering the highway in compliance with legal requirements and using due care.

"(b) The operator of every vehicle shall, consistent with the requirements of paragraph (a), operate at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, when passing school children or other pedestrians, and when special hazard exists with regard to other traffic or by reasons of weather or highway conditions."

If Tyrer was passing the Herheim car at the time of impact, as the jury found he was, he certainly was exceeding the speed of the Herheim car which appellant contends was from 30 to 35 miles per hour, and was accelerating instead of reducing his speed. For the purpose of this discussion we shall assume that he was traveling at a rate somewhat in excess of 30 to 35 mile per hour. The jury was warranted in finding that he did not "operate at an appropriate reduced speed when approaching and crossing [the] intersection." We so held squarely in *Lake to Lake Dairy Co-operative v. Andrews,* 264 Wis. 170, 58 N. W. (2d) 685, which for the sake of brevity we shall hereinafter refer to as the *Andrews Case.* In that case one Cenefelt was driving north on Highway 96. His truck collided with one being driven east on an intersecting highway. The vision of both drivers was obscured by a cornfield. This court considered that at the time of collision Cenefelt, who had the statutory right of way, was traveling at the rate of from 35 to 40 miles per hour, the lowest rate at which Tyrer could have been found to have been driving. We held that the question of Cenefelt's speed was for the jury. The majority said (p. 174):

"Whether this was a 'reasonable and prudent' speed and 'an appropriate reduced speed' under the conditions then existing and considering the hazard presented by the

cornfield, was a question for the jury. It could well have concluded from all the facts that Cenefelt's speed was appropriately reduced, reasonable, and prudent, and that he had the right to rely upon his right of way."

It is interesting to note that the minority would have held in the *Andrews Case* that under the circumstances Cenefelt should have been held negligent with respect to speed *as a matter of law.*

In *Weber v. Mayer*, ante, p. 241, 63 N. W. (2d) 318, the identical question was again presented. One Weber was proceeding west on Silver Spring road, an arterial highway, approaching County Trunk Y. A stop sign was located on "Y." A cornfield at the southeast corner of the intersection was of sufficient height and density to obscure the view of drivers of vehicles approaching the intersection from the east and south. One Holzhauer approached the intersection from the south. A collision occurred in the intersection. A jury found Weber causally negligent as to speed and control, and Holzhauer causally negligent as to lookout and control. Holzhauer was found to have stopped for the arterial. This court, by a unanimous decision, held the question of Weber's negligence as to speed was for the jury and said (p. 251) :

". . . sec. 85.40 (2) (b), Stats., requires the operator of a vehicle approaching an intersection to 'operate at an appropriate reduced speed,' and the jury might well have considered that even 35 miles per hour was too great a speed for Weber to have maintained in approaching the intersection having the obstructed view that this one did."

We are unable to distinguish the cases.

It is suggested that we must read pars. (a) and (b) of sec. 85.40 (2), Stats., together, that the expression in par. (b) "consistent with the requirements of paragraph (a)" means that one approaching an intersection must reduce his speed to avoid a collision *only* with a vehicle "entering the highway in compliance with legal requirements and using due

care," language contained in par. (a). Par. (b) is complete in itself, and without the necessity of going to any other statutory regulation lays down a rule of action. The expression "consistent with" does not limit the application of either (a) or (b) nor does it bring into the provisions of (b) those of (a). It means no more than that the two paragraphs should be construed to make them compatible or standing in agreement, not contradictory. If the statute were to be construed as suggested it would mean that an operator when approaching and crossing an obscured intersection may be held guilty of negligence with respect to speed and to have violated the provisions of (b) only when his competitor for the crossing is in all respects without fault. Such construction could not have been intended by the legislature.

Aside from the question as to what interpretation is to be given to provisions of the statute, however, we said in *Reuhl v. Uszler*, 255 Wis. 516, 522, 39 N. W. (2d) 444:

"Independent of statute, when the view of the driver of an automobile is obstructed, whether by reason of a grade or otherwise, the speed of the car should be so reduced that the car can be stopped within the distance the driver can see ahead."

And we quoted it with approval in the *Andrews Case, supra*. It should be noted that sec. 85.40 (2) (a) and (b), Stats., was in effect when both these cases were decided and that it is still in effect in its identical form.

We have no difficulty in concluding in line with the precedent cited that the jury was warranted in finding Tyrer negligent with respect to speed.

Appellant contends that the jury's finding, that Tyrer's negligence with respect to speed was causal, should not be permitted to stand. It is suggested that the question of cause was not considered by the court in the *Andrews Case* and in *Weber v. Mayer, supra*, and that, therefore, they should

not be considered as authority for the contention that the question of cause was for the jury. The answer to that suggestion may be stated rather simply—it does not seem likely that when the court spoke of negligence in those cases that it was concerned with anything less than *actionable* negligence, or that the court in considering the question of liability, was unaware that, to establish liability on the part of one guilty of negligence, such negligence must contribute to the result. If in those cases the court had determined that it had not been shown that the negligent speed of the operator did contribute to the result, there would have been no occasion to discuss the question of negligence. In those cases, as in all negligence cases, the court's concern is with the question of legal responsibility for harm done and with all of the elements required to fix such responsibility.

Assume the improbable, however, that we did not consider the question of cause in the *Andrews Case*. Without precedent, we are still required to hold that the question as to cause was for the jury. Tyrer did not reduce his speed; he did not reduce it so as to avoid the precise result which the legislature intended should be avoided. On the contrary, the jury was warranted in concluding that he accelerated it in order to pass the Herheim car. In Restatement, 2 Torts, p. 1163, sec. 432, comment *c*, it is said:

". . . if the actor's negligence, either of act or omission, results in harm of the sort from which the duty was designed to protect the other, his negligence may be regarded as a substantial factor in bringing about the harm in spite of the fact that the same harm might possibly have been sustained had the actor not been negligent. In order to prevent the actor's negligent conduct from being a substantial factor, it must clearly appear that the required precautions would have proved unavailing or that the harm would have been sustained even had the negligent act not been done."

Tyrer's failure to reduce his speed, as the statute and the rule of *Reuhl v. Uszler, supra,* require, rendered it impossible

for him to so control his car as to avoid that result. At least, the jury was properly permitted to infer that it was a substantial factor in producing it. *Paluczak v. Jones,* 209 Wis. 640, 245 N. W. 655; *Kilcoyne v. Trausch,* 222 Wis. 528, 269 N. W. 276.

What is proximate cause is ordinarily a question for the jury if the evidence is conflicting or if different inferences can be drawn from it. *Schultz v. Brogan,* 251 Wis. 390, 29 N. W. (2d) 719, and "if the evidence is conflicting or, although not contradictory, is open to two or more reasonable inferences as to what actually took place, the case must be left to the jury." Sec. 434, comment *c,* Restatement, 2 Torts, p. 1172, quoted with approval in *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 233, 55 N. W. (2d) 29.

A state of facts similar to that presented here appeared in *Neuser v. Thelen,* 209 Wis. 262, 244 N. W. 801. The car of one Neuser driving east on a state trunk highway collided with one being driven south on an intersecting road by one Thelen. The court was concerned with the question whether Neuser had been causally negligent with respect to lookout. In quoting from the opinion we substitute in brackets the pertinent portions of sec. 85.40 (2) (b), Stats., for the court's references to Neuser's responsibility as to lookout. The court said (p. 269) :

"We then have the simple question, Does one exercise ordinary care who . . . [fails to operate at an appropriate reduced speed when approaching and crossing an intersection] ? It is manifest that he does not. It is argued that Neuser had the right of way under the statute and might rightly assume that a car approaching the intersection would yield to him. But had he [operated at an appropriate reduced speed] . . . he would have had control of his car and been able to avoid collision. . . . He not only failed to use ordinary care to . . . [reduce his speed], but this failure was a proximate cause of the collision. This seems too plain for reasonable controversy."

The duty of an operator upon an arterial highway to drive at an appropriate speed when approaching an intersection is just as clearly stated in the statute as is his duty, declared in the numerous decisions of this court, to maintain an efficient lookout.

That one approaching an intersection, even on an arterial highway, is not excused from obeying the rules of the road, is elemental. He is under the legal duty, even in the absence of statute, to use reasonable care to avoid an accident. Although he has the right of way and although drivers on intersecting streets are required to stop before entering the intersection, the duty is still his to exercise reasonable care. He may assume that an approaching driver will stop in accordance with his duty, but he may not proceed in disregard of the danger which may result from another's violation. *Day v. Pauly,* 186 Wis. 189, 202 N. W. 363.

The statute and the unavoidable construction given it by the court may appear to place upon the user of an arterial highway a burden which should not be his. If that be the case, the remedy should be sought in the legislature, not in the court.

The appellant contends that the court erred in refusing to give the following requested instructions:

"Applying the language of subsection (2) (b) above [referring to 85.40 (2) (b) Stats.], it is for you to determine whether any of the above, consistent with the requirements of said paragraph (a), failed to operate at an appropriate reduced speed in approaching the intersection, or failed to take into consideration in determining his speed, the existence of any special hazards as to traffic then existing. The duty to drive at an appropriate reduced speed upon approaching an intersection does not mean that the driver must reduce his rate of speed because of such conditions, whatever that rate of speed may be. This duty comes into operation only when the speed being maintained is greater than is

reasonable and prudent under the conditions then and there existing.

"You are further instructed that Austin R. Tyrer in approaching the intersection in question was not obliged to reduce his speed, or stop, or alter his car until it ought to have become apparent to him that an automobile on County Trunk V was not going to stop at the intersection at a point at which the driver on County Trunk V could obtain an efficient and unobstructed view of the traffic on U. S. Highway 51 before crossing the intersection.

"The duty of Austin R. Tyrer to reduce his speed ceased when no other vehicle could, in the time left for Austin R. Tyrer to traverse the intersection, comply with the requirements of the law, including stopping and looking at a point where an efficient observation could be had, and enter the intersection at or before the time, Austin R. Tyrer would reach it at his then speed, provided his speed was then reasonable and prudent and within the speed limit. The duty to reduce speed could not be re-created thereafter until such time as Austin R. Tyrer would be on notice that the driver approaching U. S. Highway 51 from County Trunk V was not going to stop before entering the intersection."

The requested instruction is erroneous in that it assumes that Tyrer was not obliged to reduce his speed as provided in par. (b) of sec. 85.40 (2), Stats., "until it ought to have become apparent to him that an automobile on County Trunk V was not going to stop at the intersection at a point at which the driver on County Trunk V could obtain an efficient and unobstructed view of the traffic on U. S. Highway 51 before crossing the intersection." As we have already pointed out, par. (b) lays down a rule of action with respect to the duty of one approaching an intersection unlimited and unaffected by the provisions of par. (a). His duty is to operate at an "appropriate reduced speed," a speed which will permit him to take some effective action to avoid a possible collision, whether or not the competitor for the intersection is without fault.

The following portion of the requested instruction is erroneous for the same reason:

"The duty to drive at an appropriate reduced speed upon approaching an intersection does not mean that the driver must reduce his rate of speed because of such conditions, whatever that rate of speed may be."

There was no error in the court's refusal to give the requested instruction.

Appellant contends that a new trial should be granted on the ground of improper argument by counsel. In arguments to the jury the following occurred:

"Mr. Hall: I have sued these insurance companies in the Schmitt cases because they entered into a contract and accepted premiums for the payment of automobile insurance—

"Mr. McAndrews: If the Court please, I object to this argument as being wholly improper.

"Mr. Hall: Wait until I get through.

"Mr. McAndrews: I ask the jury be instructed to disregard that last remark.

"The Court: The motion is denied. Go ahead.

"Mr. Hall: The complaints alleged in these cases that the Home Insurance Company—the Home Mutual Casualty Company insured the deceased Tyrer. The answer admits it. The complaints allege that the American Indemnity Company was the insurance carrier on the Herheim car. The complaints allege that the Farmers Mutual Automobile Insurance Company of Wisconsin is the insurance carrier on the Schmitt car. Mrs. Tyrer in her amended complaint alleges that her husband was negligent in endeavoring to pass in an intersection. The defendant, the Insurance Company, denies that Mr. Tyrer was negligent in trying to pass in the intersection.

"Mr. Conrad: Mr. Hall, that is the defendant Home Mutual, not the Farmers Mutual."

Mr. McCusker, in his opening argument to the jury, stated:

"We are not suing, Mr. and Mrs. Roeske, the estate of Austin R. Tyrer. He is not a defendant, his estate is not a defendant, so far as we are concerned. We are suing his insurance carrier, along with the other defendants that have been mentioned, and his insurance carrier, you know, is Home Mutual, represented by Mr. McAndrews."

Certain rules have been laid down and expressions made by this court which must be considered in determining whether the remarks made by counsel constitute prejudicial error requiring a new trial: (1) Since enactment of sec. 260.11, Stats., which provides that an insurer of an automobile is a proper party defendant in an action brought on account of a claim against the insured and may be sued without joining the assured, as is the case here, it is not improper to call attention to the insurer's interest in the result of the trial. *Doepke v. Reimer,* 217 Wis. 49, 258 N. W. 345; *Balzer v. Caldwell,* 220 Wis. 270, 263 N. W. 705; (2) it must affirmatively appear that the remarks operated to the prejudice of the complaining party, *Lehner v. Chicago, M., St. P. & P. R. Co.* 204 Wis. 558, 236 N. W. 572; it cannot be presumed that the party complaining has been injured by them, *Bartlett v. Clough,* 94 Wis. 196, 68 N. W. 875; (3) however improper remarks of counsel are, it is necessary to find some affirmative evidence of their prejudicial effect in order to reverse the judgment. Sec. 274.37; *Standard Accident Ins. Co. v. Runquist,* 209 Wis. 97, 244 N. W. 757; (4) where, at most, the remarks of counsel may have affected the jury in its consideration of the question of damages, they do not require a new trial, *Ninneman v. Schwede,* 258 Wis. 408, 46 N. W. (2d) 230; (5) the excessiveness of an award of damages is considered as evidence that passion and prejudice have influenced it, and quite likely influenced the verdict on the issues, *Hanley v. Milwaukee E. R. & L. Co.* 220 Wis. 281, 263 N. W. 638; but the absence of an attack upon the award is significant in

considering the asserted error, *Doepke v. Reimer, supra;* (6) when the verdict merely resolves what has been held to be a jury question, particularly where the award of damages does not reflect the result of remarks of counsel, the court can only speculate upon the possible result of the remarks. *Standard Accident Ins. Co. v. Runquist, supra;* (7) "Where remarks have a clearly prejudicial tendency, the fact of prejudice usually is indicated by an excessive or inadequate award of damages or by findings that are against the weight of the evidence, and where the findings of the jury seem to be in accordance with the preponderance of the evidence and the damages assessed are moderate, it cannot ordinarily be said that the argument resulted in prejudice." *Plautz v. Kubasta,* 237 Wis. 198, 207, 295 N. W. 667.

As we have pointed out, the findings, except one, are supported by the evidence; no attack is made upon the jury's awards of damages, obviously for the reason that they are not considered excessive.

We find no affirmative evidence that the remarks operated to the prejudice of appellant. The application of the rules stated requires that we hold that appellant was not prejudiced by the remarks.

It is contended that the court erred in permitting Attorney Bull, in his argument to the jury, to mislead the jury as to what constitutes passing at an intersection. What we have said and held with respect to the jury's findings as to Tyrer's passing disposes of that contention. The questions should not have been submitted. The argument could not have influenced the jury's findings upon any of the other issues. If it was improper, appellant was not prejudiced thereby.

Appellant urges that the court erred in not submitting in the verdict a question inquiring whether Eloi Schmitt was negligent as to management and control. Questions as to his stopping for the stop sign, lookout, yielding the right of way, and speed were submitted and all answered in the af-

firmative. The contention that the additional question should have been submitted is based principally upon the fact that it appears that Schmitt did not apply his brakes or otherwise attempt to reduce his speed, and that such failure constitutes an omission properly to control his car. We believe that the issue was properly covered in the question which inquired as to his speed. A question in the verdict as to his control and management would have amounted to a duplication of questions. The control of his car was but an incident involved in connection with the evidence in relation to his other conduct in respect to his speed, stopping, lookout, and yielding the right of way. See, for instance, *Briggs Transfer Co. v. Farmers Mut. Automobile Ins. Co.* 265 Wis. 369, 61 N. W. (2d) 305, where we held that where a driver does not see what is in plain sight his negligence is one of lookout and his management and control do not enter the case.

It is claimed that a new trial is required in the interests of justice and that in that respect the cumulative effect of error should be considered by the court. As we have pointed out, there is no accumulation of error. The trial, a lengthy one, was conducted by able counsel, each of whom was, of course, seeking findings favorable to his client and each of whom appears to have been willing to let the chips fall where they might and upon either or any of his adversaries. We do not consider that a new trial is required.

At the opening of the trial, counsel for Farmers Mutual Automobile Insurance Company, insurer of Eloi and Peter Schmitt, announced that liability to the full extent of its policy limits, $30,000, was recognized and offered to have judgment entered against it in that amount with costs to date. The offer was accepted by those of the plaintiffs in the several actions who might be entitled to share in the distribution of the fund. No formal judgment was entered upon the offer and acceptance. On motions after verdict Farmers Mutual moved for an order permitting it to deposit with the

clerk $30,000 for the benefit of the plaintiffs and as determined by the court pursuant to a stipulation made by the parties, and that upon the making of the deposit all actions against it be dismissed. The court granted the motion, Farmers Mutual made the deposit, and the court ordered the actions dismissed as to it, reserving however, the right to determine the costs to which the parties might be entitled. Costs were taxed against it. Distribution of the fund was made.

Appellant contends that the court erred in dismissing the actions as to Farmers Mutual and that to the extent that a new trial be granted the order of dismissal should be vacated.

As appears from the foregoing, Farmers Mutual has paid all that it might be held to be liable for in any event. It has fully discharged its liability except that its obligation under its contract to defend the Schmitts should continue in the event of a new trial. That, however, is a matter that concerns only the Schmitts and their carrier. The insurer's duty to defend is a matter arising out of the contract of insurance with which no one else is concerned.

Having discharged its full liability to the plaintiffs we see no good reason why Farmers Mutual should be retained as a party to a new trial.

By reason of the fact that we have found that the jury was warranted in finding causal negligence in one or more respects on the part of both drivers there is no need for a retrial.

*By the Court.*—The judgment in each of the actions is affirmed. The order dismissing the actions as to Farmers Mutual Automobile Insurance Company is affirmed.

CURRIE, J. (*dissenting*). I respectfully dissent from the opinion of the court herein solely on the ground that I believe that Tyrer's negligent speed was not a proximate cause of the accident as a matter of law.

The test of whether a negligent act constitutes a proximate cause of an accident is whether the same was a substantial factor in causing the accident. *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. (2d) 29. Restatement, 2 Torts, p. 1161, sec. 432 (1), states:

"Except as stated in subsection (2), the actor's negligent conduct is not a substantial factor in bringing about harm to another if it would have been sustained even if the actor had not been negligent." (The exception stated in subsection (2) is not material to a fact situation as is here presented.)

In an automobile accident case, when a jury in its answer to a question in the special verdict has found a driver negligent as to speed, the question of causation can fall in any one of the following three categories:

(1) The evidence is in dispute as to whether, if the driver had been going at a lawful speed instead of an unlawful one, he would either have been able to have stopped his car or turned or swerved the same sufficiently to have avoided the accident; or, in the absence of direct evidence on this point, a legitimate inference can be drawn from the other facts in evidence that if the driver had been going at a lawful speed he could have taken effective action to have avoided the accident. The causation question under such a situation is clearly one for the jury.

(2) The evidence is undisputed that if the driver had been driving at a lawful, instead of an excessive, speed he would have been able to have stopped his car or turned the same sufficiently to have avoided the accident. Here, clearly, the excessive speed was a substantial factor in causing the accident, and if the jury should have answered the causation question in the negative it would be the duty of the trial court to change the answer and find causation as a matter of law.

(3) The evidence is undisputed that even if the driver had been proceeding at a lawful, instead of at an excessive, speed

the time interval was too short to have permitted him to have stopped his car or taken any other effective action to avoid the accident, such as turning to one side or the other. In such a situation speed could not possibly be a substantial factor in causing the accident, and, if the jury should have answered the causation question in the affirmative, it would be the duty of the trial court to change the answer and find that speed was not a proximate cause as a matter of law.

The facts of the present case clearly place it in the last of the above three mentioned categories. At, and near, the scene of the accident the black-top pavement of Highway 51 is 22 feet wide and that of Highway V is 26 feet wide. The vision at the southwest corner of the intersection is badly obstructed. The land to the south of Highway V at this intersection is considerably higher than the traveled portion of "V" which land forms an embankment at the intersection which obstructs the view. Furthermore, there was a field of corn planted which extended up to the fence lines at the southwest corner of the intersection. This embankment of soil is higher than the hood of an automobile, though not quite as high as the top of a car, but the corn was, of course, higher than the top of the car traveling on "V." The distance from the west fence line to the west line of the pavement of Highway 51 is 28.8 feet, but the embankment extended somewhat to the east of the fence line. The arterial stop sign was 32 feet west of the west line of the pavement of Highway 51. The operator of a car approaching from the south on his own right or east side of the paved portion of 51, therefore, only would have a view of a moving car entering the intersection from the west on Highway V for a maximum distance of 28.8 feet plus another 12 or 13 feet (the latter being the distance from the west edge of the pavement to a point one or two feet east of the pavement center line), or approximately 40 to 42 feet. Forty feet probably would be the more accurate distance because of the

embankment at the southwest corner of the intersection projecting into the highway limits east of the fence line.

As to the speeds of the respective vehicles, Eloi Schmitt testified that he was going 45 miles per hour when he saw the arterial stop sign on the west side of Highway 51, and then reduced his speed so that he was going 25 miles per hour when the impact occurred. His father, who was a passenger in the car, estimated the speed of the car to be 35 to 40 miles per hour when the car passed the stop sign. One of the photographs clearly shows that the frame of the Tyrer car was bent inward a distance of approximately two feet as a result of the impact. Assuming that the average speed of the Schmitt car from the point where it first became visible to a driver, such as Tyrer, approaching from the south, as it traversed the approximately 40 feet of the intervening distance to a point one to two feet east of the center line of the paved portion of Highway 51 to have been 25 miles per hour, the Schmitt car would only have been visible to Tyrer for approximately one second. This is because an automobile traveling at a speed of 25 miles per hour travels a distance of 36.75 feet per second, according to the chart of the state motor vehicle department received in evidence as an exhibit. Whether one second of time (1.1 seconds at the most) would have been sufficient to have permitted Tyrer to have done anything to avoid the accident after the Schmitt car first became visible, assuming Tyrer to have been going at a lawful speed, is dependent on what would have constituted a lawful speed under the circumstances then prevailing.

The Tyrer car was just ahead of the Herheim car at the time of the impact and, as a result thereof, the Schmitt car swerved to the south and struck the left front fender of the Herheim car so as to cause some damage to that vehicle. Mrs. Herheim testified that she was going at the time of the accident 30 to 35 miles per hour. Questions as to her negli-

gence were submitted to the jury and the jury absolved her of any negligence, including speed. Therefore, we have a determination by the jury, that a speed of 30 miles per hour at this intersection was nonnegligent as to cars approaching from the south on the arterial.

Even if we did not have this jury determination that 30 miles per hour was a lawful speed for a vehicle approaching the intersection from the south (as were the Tyrer and Herheim cars), it could well be held as a matter of law that a reduced speed of 30 miles per hour constitutes a lawful speed for a vehicle approaching this obstructed intersection to the south so long as no other vehicle approaching on Highway V was in sight. Except for the obstruction of the view at the intersection, a speed of 65 miles per hour would have been lawful during daylight hours. Busy arterial highways, such as 51, carry a very heavy traffic load during the daylight hours, and operators of cars should not be required to reduce speed below 30 miles per hour until some vehicle is sighted on the intersecting highway that poses a potential threat of danger. To permit a jury to find a lower speed than 30 miles per hour was required would tend to impede traffic. Operators of vehicles on arterial highways have a right to assume that any driver approaching on the intersecting nonarterial county highway will not only physically stop at a point between the arterial stop sign and the paved portion of the arterial which will afford a reasonable view of approaching traffic on the arterial, but that such driver will not plunge ahead until after having made such observation and having concluded that he can safely do so. *Kraskey v. Johnson* (1954), ante, pp. 201, 207, 63 N. W. (2d) 112.

According to the chart of the motor vehicle department introduced in evidence, a distance of 83 feet is required for a vehicle traveling 30 miles per hour to stop under ordinary conditions, which distance is apportioned as between reaction distance and stopping distance on the basis of 33 feet

for the former and 50 feet for the latter. Therefore, it would have been a physical impossibility during the one second available to Tyrer after the Schmitt car first became visible, to have taken any effective action whatever to have stopped, or to have swerved sufficiently out of the path of the oncoming Schmitt car, as to have avoided the accident. It, therefore, follows that Tyrer's speed could not have been causal as a matter of law, because it was in no sense a substantial factor in producing the accident.

Inasmuch as neither Tyrer's negligence in passing at an intersection, nor his speed, was causal, the judgments as to the defendant Home Mutual Casualty Company, the insurer of the Tyrer automobile, should be reversed and the causes of action dismissed as to such defendant.

I am authorized to state that Mr. Justice BROWN concurs in this dissenting opinion.